IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| KEITH STILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:11cv141-MHT |
| DR. JEAN DARBOUZE, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |

**OPINION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by plaintiff Keith Still, an indigent state inmate, challenging a prior decision of medical personnel at the Easterling Correctional Facility that he is not an appropriate candidate for use of a prosthetic leg. Still names the following persons as defendants: the Alabama Department of Corrections, Dr. Jean Darbouze (the medical director at the Easterling Facility), and Correctional Medical Services, also know as CMS (the contract medical care provider for the state prison system).. Still seeks a full medical examination, provision of a prosthetic leg, and any other relief the court deems proper. The court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

The defendants filed special reports and relevant supporting evidentiary materials, including medical records and an affidavit from Dr. Darbouze, addressing Still's claim for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe these reports as motions for summary judgment. Thus, this case is now pending

on the defendants' motions for summary judgment. Upon consideration of the motions, the evidentiary materials filed in support of it and Still's response to it, the court concludes that the defendants' motions should be granted.

## I.  STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    DISCUSSION

### A.    The Alabama Department of Corrections

The law is well-settled that the State of Alabama and its agencies are absolutely immune from suit for claims brought by inmates alleging inadequate medical treatment. *See Papasan v. Allain*, 478 U.S. 265 (1986) (unless the State or its agency consents to suit, the plaintiff cannot proceed against such defendant as the action is proscribed by the Eleventh Amendment, and "[t]his bar exists whether the relief sought is legal or equitable"). Any claims lodged against the Alabama Department of Corrections are

therefore "based on an indisputably meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[1]  Consequently, the Alabama Department of Corrections is entitled to summary judgment in its favor.

### B. Claims Against Dr. Darbouze and CMS

Still asserts that, during his confinement at the Easterling Facility in the latter part of 2010 through mid-2011, Dr. Darbouze and CMS denied him use of a prosthetic leg. Specifically, he alleges that Dr. Darbouze denied him proper consideration for "being given a prosthetic leg, after having had removal of his [right] leg below the knee, due to poor circulation, in 2008," and that Dr. Darbouse "will approve nothing more than a wheel chair . " Compl. (Doc. No. 1) at 2.[2]  Dr. Darbouse and CMS deny that they acted with deliberate indifference to Still's medical needs.  In support of this assertion, they maintain that they provided medical treatment to Still in accordance with their professional judgment and determined that he was not an appropriate candidate for a prosthesis on his lower right leg due to his overall poor physical condition.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor*

---

1. Although *Neitzke* interpreted 28 U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

2. The record establishes that Still was transferred from the Easterling Facility to Kilby Correctional Facility sometime prior to August 15, 2011, and thereafter from the Kilby Facility to the Hamilton Aged and Infirmed Facility in January 2012.

*v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

"*Estelle* requires, however not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (quoting *Howell v. Evans*, 922 F. 2d 712, 721 (11th Cir. 1991)). Thus,

> "That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S. Ct. 1970, 1977-79, 128 L. Ed. 2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined 'deliberate indifference' as requiring more than mere negligence and has adopted a 'subjective recklessness' standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that 'deliberate indifference' is synonym for intentional or 'reckless' conduct and that reckless conduct describes conduct so dangerous that deliberate nature can be inferred)."

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *see also McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Thus,

> "In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ...

5

> emphasized that not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 '(Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977))."

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (quoting *Estelle*, 429 U.S. at 107); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated

does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

      The affidavit of Dr. Darbouze addresses the claim made by Still regarding the denial of a prosthesis. A thorough review of the evidentiary materials filed in this case demonstrates that this affidavit is corroborated by the objective medical records compiled contemporaneously with treatment provided to Still relative to the instant claim of deliberate indifference. She opines: "After ... evaluation, I determined that Mr. Still was not a candidate for a prosthetic leg because his right leg and hip lacked sufficient strength to withstand the day-to-day rigors associated with the use of a prosthesis." Defs.' Exh. 1 (Doc. 7-1) at 2-5 (citations to medical records omitted). She further opines: "I was also concerned about the possibility of Mr. Still sustaining serious injuries as a result of a fall with the use of a prosthesis. For example, Mr. Still had previously experienced a fall out of his wheelchair on September 4, 2010, which resulted in an emergency evaluation by the Easterling medical staff." *Id*. She then concludes: "I can state to a reasonable degree of medical certainty that Mr. Still would not derive any significant benefit from a leg prosthesis given his overall medical condition. Furthermore, I do not believe in my medical judgment that it would be advisable for Mr. Still to utilize a leg prosthesis

because of the potential risks for further injury if Mr. Still attempted utilize a prosthetic leg." *Id.*[3]

---

3. The following is Dr. Darbouze's more detailed explanation of her decision to deny Still's request for a prosthetic lower right leg.

> "Mr. Still arrived at Easterling on June 28, 2010 and, therefore, he has only been under my care for a period of less than one year as of the date of this Affidavit (April 8, 2011). Mr. Still's right leg was amputated below his right knee in or about 2008, i.e. prior to his incarceration at Easterling. I understand based upon conversations with Mr. Still and a review of his medical records that, since the surgical amputation of his right leg, Mr. Still has not utilized a prosthesis of any kind at any time. In fact, at the time of his arrival at Easterling, Mr. Still was still confined to a wheelchair.
>
> "Prior to arriving at Easterling, Mr. Still had been previously diagnosed with a number of chronic medical conditions. For example, Mr. Still experienced a significant stroke in 2004, which resulted in some degree of lasting weakness in his extremities. Additionally, Mr. Still had been diagnosed with diabetes, hyperlipidemia and hypertension. Throughout his incarceration at Easterling, I have prescribed a regimen of medications for these chronic conditions, and Mr. Still has been enrolled in regularly scheduled chronic care clinics for routine evaluations of his chronic conditions by me and other members of the medical staff. I, along with other members of the medical staff at Easterling, provided Mr. Still with 'profiles,' which are simply medical orders allowing him to deviate from the standard operating protocols within a correctional facility in order to accommodate a patient's chronic medical conditions.
>
> "Mr. Still filed a Medical Grievance, pursuant to the long-standing grievance procedure available to all inmates at Easterling, on October 11, 2010. In this Medical Grievance, Mr. Still complained about the absence of an order for him to receive a prosthesis for his right leg. Kay Wilson, a registered nurse and the health services administrator at Easterling, responded to this Medical Grievance, stating that Mr. Still had not previously

(continued...)

3.(...continued)

> requested an evaluation for a prosthesis and instructed Mr. Still to submit a sick call form if he truly wished to be evaluated for a prosthesis for his right leg. As Nurse Wilson stated and as reflected in Mr. Still's medical records, he had not submitted any written request to the medical staff prior to October 11, 2010, for evaluation for a leg prosthesis and he had not voiced any such request to me prior to this date.
>
> "Mr. Still submitted a sick call request form on October 13, 2010, requesting that I 'examine' him for a prosthetic leg. Pursuant to the sick call procedure at Easterling, Mr. Still underwent an initial evaluation the following day by a member of the medical staff during the course of sick call and was referred to me for further evaluation.
>
> "I evaluated Mr. Still on October 18, 2010, regarding his request for a leg prosthesis. At the time of this evaluation, I conducted a thorough physical examination of Mr. Still to determine the level of strength as well as the overall structural capacity of his right leg and hip. After this evaluation, I determined that Mr. Still was not a candidate for a prosthetic leg because his right leg and hip lacked sufficient strength to withstand the day-to-day rigors associated with the use of a prosthesis. In fact, I became very concerned that a prosthesis might cause a fracture in Mr. Still's right hip - an injury that is not uncommon in patients who have undergone the very type of amputation experienced by Mr. Still whose hips are no longer capable of tolerating the weight associated with the use of a prosthesis. I was also concerned about the possibility of Mr. Still sustaining serious injuries as a result of a fall with the use of a prosthesis. For example, Mr. Still had previously experienced a fall out of his wheelchair on September 4, 2010, which resulted in an emergency evaluation by the Easterling medical staff. At the conclusion of this appointment [and my evaluation of his physical condition], I assured Mr. Still that I would undertake a complete review of his medical records to confirm my findings. My review of Mr. Still's historical medical records confirmed that (a) Mr. Still had never utilized a leg prosthesis, and (b) there was no indication in Mr. Still's historical medical records that

(continued...)

---

3.(...continued)
he would derive any benefit from a prosthesis.

"I can state to a reasonable degree of medical certainty that Mr. Still would not derive any significant benefit from a leg prosthesis given his overall medical condition. Furthermore, I do not believe in my medical judgment that it would be advisable for Mr. Still to utilize a leg prosthesis because of the potential risks for further injury if Mr. Still attempted utilize a prosthetic leg.

"After I evaluated Mr. Still to determine his eligibility for a prosthetic leg, he experienced a number of different falls from his wheelchair, which confirmed my conclusion that it would not be in Mr. Still's best interest for him to attempt to utilize a prosthetic leg. On December 9, 2010, I evaluated Mr. Still after he fell out of his wheelchair and sustained a laceration to the back of his head and was observed for a period of 24 hours in the Easterling infirmary. On December 12, 2010, I evaluated Mr. Still on another occasion after he fell out of his wheelchair and sustained minor injuries.

"Mr. Still filed another Medical Grievance on October 21, 2010, complaining about the refusal of the medical staff to order a prosthesis for his right leg. Nurse Wilson responded the following day, reminding Mr. Still that, per my prior examination of him, his request for a prosthetic leg was denied because of the "weakness" in his right leg which could result in either 'multiple falls' or 'hip fracture.' On October 27, 2010, Mr. Still filed a Medical Grievance Appeal, contesting my medical decisions related to his eligibility for a prosthetic leg and specifically stated that the potential of falls and hip fracture 'can not be used as a basis for denial.' As stated in Nurse Wilson's response, the decisions as to Mr. Still's eligibility for a prosthesis is dependent upon initial approval by a physician.

"During Mr. Still's incarceration at Easterling, I did not at any time ignore any of his requests for medical treatment. I did not deliberately ignore any of Mr. Still's medical complaints or interfere in any way with the provision of medical care to Mr.

(continued...)

10

In his responses, Still disagrees with Dr. Darbouze's assessment of his physical condition and asserts his belief that he is "physically able to receive a [prosthetic] leg." Pl.'s Resp. (Doc. 24) at 3. This assertion is not support by any verifiable medical evidence. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Dr. Darbouze and CMS to address Still's request for a leg prosthesis did not violate his constitutional rights. The medical care Still received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Still simply fail to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-46 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an

---

3.(...continued)
  Still at any time. I have not taken any action which has caused
  Mr. Still to experience any unnecessary pain and/or suffering."

Defs.' Exh. 1 (Doc. 7-1) at 2-5 (citations to medical records omitted).

11

appropriate basis" on which to ground constitutional liability. In addition, an inmate's allegation that prison physicians did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence' . . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Dr. Darbouze thoroughly examined Still, conducted an assessment of Still's overall physical condition, and reviewed relevant medical records in an effort to determine his viability for use of a prosthesis. Upon completion of this evaluation, Dr. Darbouze determined that Still should not be provided a prosthetic leg for essentially two reasons: First, "Still was not a candidate for a prosthetic leg because his right leg and hip lacked sufficient strength to withstand the day-to-day rigors associated with the use of a prosthesis," Defs.' Exh. 1 (Doc. 7-1) at 2-5 (citations to medical records omitted); and, second, there was the serious "possibility of Mr. Still sustaining serious injuries as a result of a fall with the use of a prosthesis." *Id*. It is clear that Dr. Darbouze rendered this decision in accordance with her professional judgment. Moreover, Still has failed to present any evidence which indicates that Dr. Darbouze and CMS knew that this decision created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the Dr. Darbouze and CMS acted with deliberate indifference

to Still's medical needs.  Consequently, summary judgment is due to be granted in favor of Dr. Darbouze and CMS.  *Carter*, 352 F.3d at 1350.

\*\*\*

An appropriate summary judgment will be entered in favor of the Alabama Department of Corrections, Dr. Darbouze, and CMS and against Still.

DONE, this the 25th day of March, 2014.

    /s/ Myron H. Thompson  
UNITED STATES DISTRICT JUDGE